IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| HEALTH FREEDOM DEFENSE FUND, a Wyoming Not-for-Profit Corporation, FEDERAL EMPLOYEES FOR FREEDOM, a voluntary unincorporated association, RAYLENE WORLEY, an individual, CHRISTOPHER M. WALSH, an individual, CHARLES MATTHEW CONROY, an individual, JUSTIN AARON CURTIS, an individual, KIMBERLY KESSEL ELSHOLZ, an individual, and JOSEPH AARON WILLIAMS, an individual,<br><br>       Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States; SAFER FEDERAL WORKFORCE TASK FORCE; KIRAN AHUJA in her official capacity as co-chair of the Safer Federal Workforce Task Force and the director of the Office of Personnel Management; ROBIN CARNAHAN in her official capacity as co-chair of the Safer Federal Workforce Task Force and Administrator of the General Services Administration; and Jeffrey Zients in his official capacity as a co-chair of the Safer Federal | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br><br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND DECLARATORY AND INJUNCTIVE RELIEF<br><br>DEMAND FOR JURY TRIAL |

Workforce Task Force and COVID-
19 Response Coordinator.

   Defendants.

_____

# I.
## INTRODUCTION

1.     At issue is American virtue. It comes to the court through the lens of
the right to self-determination and bodily autonomy encompassed within the right to
privacy.

2.     The right to self-determination over one's own body is neither tethered
to, nor predicated upon, objective fact-finding of what is purportedly right, correct,
or true as judged by contemporary society. It is the province of the soul. It cannot,
and ought not be, legislatively usurped and second guessed by the Executive Branch
in reliance on the best intentions of experts in a decidedly novel, and ever evolving
area of indisputably unsettled science.

3.     Nothing is more fundamental to the role government plays in the Great
American Experiment, than the notion that mankind is "endowed by their Creator
with certain unalienable Rights[.]" (Declaration of Independence, 1 Stat. 1.) As such,
only "to secure these Rights, Governments are instituted among Men, deriving their
just Powers from the Consent of the Governed[.]" (*Ibid*).

4.     In keeping with rights being inherent to the very nature of mankind, the
Bill of Rights grants none. Instead, it prohibits governmental intrusion upon the

intrinsic, existing rights of the governed, by further making clear, for example, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press[.]" (U.S. constitution amendment I.)

5.      In the avoidance of doubt, the "enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." (U.S. constitution amendment IX.)

6.      In times of strife and turmoil, it is perhaps more important than ever to keep in mind the very foundation on which our nation was built. Indeed, it is that foundation which chartered the course for where we find ourselves today. Private matters of personal, bodily choice are reserved by the governed.  The governed have not granted that power to the government.

7.      Under the Constitution then, those matters retained by the governed are to be decided by the individual, on a case-by-case basis.  Not by sweeping mandates making that decision for all, without regard to the various medical situations, beliefs, and morals of each person.

8.      The High Court teaches that our Constitution "is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar, or novel, and even shocking, ought not to conclude our

judgment upon the question whether statutes embodying them conflict with the Constitution of the United States." *Lochner v. New York,* 198 U.S. 45, 76 (1905).

9.     The issue to be decided here then is *not* whether the emerging science and statistics support, or refute, the use, efficacy, and safety of the vaccines, *but* whether that decision remains with, and is reserved by, the individual into whose body the vaccine will be injected, or whether instead under the Constitution the people gave that right to the government to decide for them through sweeping Executive Orders.

10.     The people have, and have retained, the right to self-determination, particularly in matters of choice concerning bodily autonomy.  The people have never delegated those rights to the government. As such, the government has neither the just power, nor the consent of the governed, to forcibly decide for them.

## II.
## PARTIES

11.     HEALTH FREEDOM DEFENSE FUND ("HFDF") is, and at all times relevant hereto was, a not-for-profit public benefit Wyoming corporation with its headquarters in Sandpoint, Idaho. HFDF is a member organization that seeks to advocate for and educate the public on the topics of medical choice, bodily autonomy, and self-determination, and that opposes laws and regulations that force individuals to submit to the administration of medical products, procedures, and devices against their will. HFDF's members include federal government employees

4

who reside in this District and are directly affected by the subject actions of Defendants.  They accordingly could have brought suit in their own right, but have chosen to rely on HFDF to represent their interests in this case.  The interests at stake in this case are germane to HFDF's purpose, and neither the claims asserted, nor the relief requested requires the individual participation of its members.

12.     Plaintiff FEDERAL EMPLOYEES FOR FREEDOM ("FEFF") is, and at all times relevant hereto was, a voluntary unincorporated association of approximately 6,000 federal employees whose purpose is to advocate for the constitutional rights and freedoms concerning bodily autonomy, self-determination, privacy, and religious freedom, in particular as it relates to governmental mandates requiring vaccination against SARS-CoV-2, the virus that causes COVID-19 disease ("COVID"). FEFF's members include federal employees who reside in this District and are directly affected by the subject actions of Defendants.  They therefore could have brought suit in their own right, but have chosen to rely on FEFF to represent their interests in this case.  The interests at stake in this case are germane to FEFF's purpose, and neither the claims asserted, nor the relief requested requires the individual participation of its members.

13.     Plaintiff RAYLENE WORLEY is, and at all times relevant hereto was, a resident of Hillsborough County, Florida, and is employed as an Intelligence Research Specialist with the Office of Professional Responsibility.  As part of her

job duties, Ms. Worley regularly investigates the misuse of government databases, and is thus familiar with their vulnerabilities. She also has been a victim of two data breaches on government databases. Based on this and her knowledge of applicable laws, regulations, policies, and procedures, Ms. Worley objects to the broad and intrusive Privacy Act disclosure form that every employee must sign and submit in order to be in compliance with the vaccination mandate.

14.     Plaintiff CHRISTOPHER M. WALSH is, and at all times material hereto was, a resident of Pasco County, Florida, and works as an Air Traffic Controller. Mr. Walsh has recovered from COVID-19, and therefore has natural immunity to the disease. For this and other reasons, he objects to being vaccinated against his will.

15.     Plaintiff CHARLES MATTHEW CONROY is, and at all times relevant here to was, a resident of the State of Florida, and employed as a Fire Captain with the Department of Defense at Eglin Air Force Base in Florida. Mr. Conroy has not been fully vaccinated against COVID and has religious and moral reasons which cause him to oppose the administration of the vaccine as it relates to his own body.

16.     Plaintiff JUSTIN AARON CURTIS is, and at all times relevant hereto was, a resident of the State of Florida, and employed as a Fire Captain at Eglin Air Force Base in Florida. Mr. Curtis has not been fully vaccinated against COVID and

6

opposes the forced requirement of being full vaccinated against COVID as a condition of his continued employment in violation of his constitutional rights and freedoms concerning bodily autonomy, self-determination, privacy, and religious freedom.

17.    Plaintiff KIMBERLY KESSEL ELSHOLZ is, and at all times relevant hereto was, a resident of the State of Florida, and employed as a Deputy U.S. Marshall in Florida. Ms. Elsholz has not been fully vaccinated against COVID and medical reasons for which cause her to oppose the administration of the vaccine. Ms. Elsholz is further opposed to vaccination against COVID as the none of the vaccines presently available to her have received full FDA approval.

18.    Plaintiff JOSEPH AARON WILLIAMS is, and at all times relevant hereto was, a resident of the State of Florida, and employed as an Analysist with the Department of Defense.  Mr. Williams has not been fully vaccinated against COVID and opposes the forced requirement of being fully vaccinated against COVID as a condition of his continued employment in violation of his constitutional rights and freedoms concerning bodily autonomy, self-determination, privacy, and religious freedom.

19.    HFDF, FEFF, Walsh, Worley, Conroy, Curtis, Elsholz, and Williams are hereinafter referred to collectively as Plaintiffs.

20.     Defendant, JOSEPH R. BIDEN ("President Biden") is, and at all times relevant hereto was, the President of the United States. President Biden is sued herein in his official capacity.

21.     Defendant SAFER FEDERAL WORKFORCE TASK FORCE ("SFWTF") is, and at all times relevant hereto was, a task force established by President Biden on January 20, 2021 Executive Order 13991.[1] Its stated purpose is to provide "ongoing guidance to the heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government function during the COVID-19 pandemic."  86 FR 7045, 7046.

22.     Defendant KIRAN AHUJA is, and at all times relevant hereto was a co-chair of the SFWTF and the director of the Office of Personnel Management. Defendant Kiran Ahuja is sued in her official capacities.

23.      Defendant ROBIN CARNAHAN is, and at all times relevant hereto was, a co-chair of the SFWTF and administrator of the General Services Administration.  Defendant Robin Carnahan is sued in her official capacities.

24.     Defendant JEFFREY ZIENTS is, and at all times relevant hereto was, a co-chair of the SFWTF and COVID-19 Response Coordinator. Defendant Jeffrey Zients is sued in his official capacities.

---

[1] https://www.federalregister.gov/d/2021-01766

### III.
### JURISDICTION AND VENUE

25.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1361, and 1367.

26.     The Court is authorized to award and request declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 1361 and 2201-02.

27.     Venue is proper within this District pursuant to 28 U.S.C. § 1391(e) because Plaintiffs Walsh and Worley, as well as other members of Plaintiffs HFDF and FEFF, reside in this District.

### IV.
### FACTUAL BACKGROUND

**A.     The Executive Order Creating SFWTF.**

28.     On January 20, 2021, President Biden Executive Order No. 13991: "Protecting the Federal Workforce and Requiring Mask-Wearing" ("EO 13991"). 86 FR 7045.[2]

29.     Among other things, EO 13991 established the SFWTF.  The SFWTF is co-chaired by Defendants: (i) Kiran Ahuja as Director or Office of Personal Management; (ii) Robin Carnahan as the Administrator of General Services; and (iii) Jeffrey Zients as the COVID 19-Response Coordinator.

---

[2] https://www.govinfo.gov/content/pkg/FR-2021-01-25/pdf/2021-01766.pdf

30.     The scope of EO 13991, and thus the reach of the SFWTF which it created, applies to all Federal employees, which it broadly defined to mean "employees . . . working for the executive branch[.]"

31.     Plaintiffs Worley, Conroy, Curtis, Elsholz, and Williams, as well as affected members of Plaintiffs HFDF and FEFF, are therefore subject to the dictates of SFWTF, as are the agencies themselves, for whom those Plaintiffs work.

32.     The approximately six thousand (6,000) members of FEFF are employees of various agencies of the federal government. Some members have declined to disclose medical records regarding their vaccination status to their employers altogether. Others have declined to provide constitutionally protected information relating to their religious freedoms and/or confidential medical information to their employers in support of an exception to the government's policy requiring its employees to be vaccinated for COVID.

33.     EO 13991 obligates the heads of the various executive branch agencies to "promptly provide the Task Force a report on COVID-19 safety protocols, safety plans, or guidance regarding the operation of the agency and the safety of its employees, and any other information that the head of the agency deems relevant to the Task Force's work." 86 Fed. Reg. 7047.

**B.**     **The Mandate, its Requirements, and Consequences for Non-Compliance.**

34.     With the SFWTF in place, on September 9, 2021, President Biden issued Executive Order No. 14043 "Requiring Corona Virus Disease 2019 Vaccination for Federal Employees" (the "Mandate").[3] 86 Fed. Reg. 50989 (Sept. 9, 2021).

35.     Section 2 of the Mandate is titled: "*Mandatory Coronavirus Disease 2019 Vaccination for Federal Employees.*" It directs: "Each agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law. The Task Force shall issue guidance within 7 days of the date of this order on agency implementation of this requirement for all agencies covered by this order."   86 Fed.Reg. at 50,990.

36.     In response SFWTF dutifully issued guidance to the agencies on implementation of the Mandate via the "Frequently Asked Questions" page of its website.[4]   Implicated here is the "Vaccinations" section of the Frequently Asked Questions page.

---

[3] https://www.federalregister.gov/d/2021-19927

[4] https://www.saferfederalworkforce.gov/faq/ (last visited 11/3/2021)

37.    The "Vaccinations" section instructs the various agencies that "Federal employees need to be fully vaccinated by November 22, 2021." [5]

38.    It further directs that "agencies **must** require documentation from employees to prove vaccination, even if an employee has previously attested to their vaccination status." (Emphasis added)

39.    Acceptable documentation attesting to the employee's vaccination status consists of:

> [A] copy of the record of immunization from a health care provider or pharmacy, a copy of the COVID-19 Vaccination Record Card, a copy of medical records documenting the vaccination, a copy of immunization records from a public health or state immunization information system, or a copy of any other official documentation containing required data points (the required data points for such other official documentation are the type of vaccine administered, date(s) of administration, and the name of the health care professional(s) or clinic site(s) administering the vaccine(s)).

40.    The implementation guidelines promulgated by SFWTF further caution:

> Employees covered by Executive Order 14043 [the Mandate] who fail to comply with a requirement to be fully vaccinated **or provide proof of vaccination** and have neither received an exception nor have an exception request under consideration, are in violation of a lawful order. Employees who violate lawful orders **are subject**

---

[5] https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited 11/3/2021)

**to discipline, up to and including termination or removal**. (Emphasis added)

41.     The guidelines therefore establish that an employees' failure to provide satisfactory documentation of COVID vaccination status to an agency employer is itself an independent violation of the Mandate, irrespective of whether the employee is, or is not, vaccinated.

**C.     The Medical and Religious Exceptions to the Mandate and   the Required Documentation to be Submitted to Agency to Apply.**

42.     Acknowledging the constitutional and legal ramifications of the Mandate, the "Vaccinations" section of SFWTF' Frequently Asked Questions page contains a subsection entitled: "Limited Exceptions to Vaccination Requirement" as updated. It states: "Federal employees must be fully vaccinated other than in limited circumstances where the law requires an exception."

43.     SFWTF admits that the law requires, among other things, religious, medical, and disability exemptions to the Mandate .

44.     In response to the question "[s]hould agencies provide employees who are seeking a legally required exception to the vaccination requirement with a form?" SFWTF responds:

> Yes. Agencies can refer to the following templates to develop a form for employees who are seeking an exception based on a medical condition (*template issued October 4, 2021*) or based on religion (*template updated October 29, 2021*). The information on the forms may be used by the agency to help determine whether the

employee is entitled to an accommodation. The agency may also ask for other information as needed to determine if the individual is legally entitled to an accommodation. (Italics in original)

45.     In turn, the forms provided by SFWTF for agency use indicate that employees requesting a medical exemption "must complete Part 1 of this form" and their "medical provider must complete Part 2 of this form."[6]

46.     The "Request for Medical Exception to the COVID-19 Vaccination Requirement" form requires the employee's medical provider to give the agency "at least the following information, where applicable:"

1. The applicable contraindication or precaution for COVID-19 vaccination, and for each contraindication or precaution, indicate: (a) whether it is recognized by the CDC pursuant to its guidance; and (b) whether it is listed in the package insert or Emergency Use Authorization fact sheet for each of the COVID-19 vaccines authorized or approved for use in the United States;

2. A statement that the individual's condition and medical circumstances relating to the individual are such that COVID-19 vaccination is not considered safe, indicating the specific nature of the medical condition or circumstances that contraindicate immunization with a COVID-19 vaccine or might increase the risk for a serious adverse reaction; and

3. Any other medical condition that would limit the employee from receiving any COVID-19

---

[6]

https://www.saferfederalworkforce.gov/downloads/DISABILITY%20REQUEST%20FORM%20-%2020211004_510pm%20-%20MH508.pdf     (Last accessed November 4, 2021)

vaccine.

47.     The "Request for a Religious Exception to the Covid-19 Vaccination Requirement" form explains "Federal law may entitle a Federal employee who has a religious objection to the COVID-19 vaccination requirement to an exception from that requirement . . ." It instructs that "[i]n order to request a religious exception, please fill out this form." [7]

48.     The religious exemption form "encourage[s] [the employee] to provide as much information as possible to enable the agency to evaluate [the] request."  It further provides "[w]here there is an objective basis to do so, the agency may ask you for additional information as needed to determine if you are legally entitled to an exception." [8]

49.     The religious exemption form requires the employees to do each of the following:

> 1. Please describe the nature of your objection to the COVID-19 vaccination requirement.
>
> 2. Would complying with the COVID-19 vaccination requirement substantially burden your religious exercise or conflict with your sincerely held religious beliefs, practices, or observances? If so, please explain how.

---

[7]
https://www.saferfederalworkforce.gov/downloads/RELIGIOUS%20REQUEST%20FORM_FINAL%20REVIEW_20211003%2010.29%2011am.pdf
(Last visited November 4, 2021)

[8] *Id.*

3. Please provide any additional information that you think may be helpful in reviewing your request. For example:

> • How long you have held the religious belief underlying your objection

> • Whether your religious objection is to the use of all vaccines, COVID-19 vaccines, a specific type of COVID-19 vaccine, or some other subset of vaccines

> • Whether you have received vaccines as an adult against any other diseases (such as a flu vaccine or a tetanus vaccine)[9]

## D.   COVID Spread Characteristics and Transmission Risk

50.   A preponderance of evidence presently shows an increased "viral load" after vaccination, which tends to actually increase the spread of COVID by vaccinated people.  A recent study of vaccine breakthrough delta variant infections found vaccinated individuals carried 251 times the load of COVID viruses in their nostrils compared to unvaccinated persons from early in the pandemic.[10]

51.   According to the CDC, for those who are fully vaccinated and get infected (*i.e.*, "breakthrough infections"), there is still a risk of transmission to others. In July 2021, a CDC study CDC noted 469 cases of COVID where approximately three quarters (346; 74%) of cases occurred in fully vaccinated persons; *i.e.*, those who had completed a 2-dose course of the mRNA vaccine

---

[9] *Id*.
[10] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897733 (Last visited 11/11/2021)

(Pfizer-BioNTech or Moderna) or had received a single dose of the Janssen (Johnson & Johnson) vaccine.

52.     More recently, the CDC has admitted to having no evidence that people with natural immunity have transmitted COVID to others.

53.     Current studies show that fully vaccinated people carry the same viral load as the unvaccinated, with the Delta variant—which is to say that current vaccines don't materially prevent transmission of the Delta variant.

54.     If the goal is to prevent the federal workforce from contracting and spreading COVID within the workplace and risk transmission to the public that depends on federal services, the evidence shows that mandatory vaccination of the federal workforce is not rationally related to that goal.

**V.**
**<u>LEGAL BACKGROUND</u>**

**A.     Regulations Prohibiting the Government from Requiring, and Possessing, the Documentation Employees are Required to Submit to Comply with the Mandate by Proving Vaccination Status and/or Applying for a Medical or Religious Exception.**

55.     Part 293 of Title 5 of the Code of Federal Regulations concerns "Personnel Records". While no portion of that part permits the Office of Personnel Management to collect or require the documentation necessary to comply with the Mandate, various parts prohibit it.

56.    Part 293.504 of Title 5 of the Code of Federal Regulations is titled: "Composition of, and access to, the Employee Medical File System."

57.    It expressly *excludes* the very medical records, the submission of which is *required* by SFWTF, for an employee to satisfy the Mandate by affirmatively proving vaccination status.

58.    It further *excludes* the medical records *required* for an employee to obtain a medical exception, which SFWTF acknowledges is among the "circumstances where the law requires an exception" to the Mandate.

59.    Part 293.504 provides: "All employee occupational medical records (which **exclude** employee assistance/counseling, **patient**, non-personal, and **epidemiological records**) whether they are maintained in an automated, microform, or paper mode, and wherever located in the agency, are part of the EMFS." (Emphasis added).

60.    Part 293.105 of title 5 of the Code of Federal Regulations is titled: "Restrictions on collection and use of information."

61.    It expressly *excludes* the very materials, the submission of which, SFWTF *requires* for an employee to obtain a religious exception, which SFWTF acknowledges is among the "circumstances where the law requires an exception" to the Mandate.

62.    Subpart (a) thereof is titled "First Amendment" and provides:

"Personnel records describing how individuals exercise rights guaranteed by the First Amendment are prohibited unless expressly authorized by statute, or by the individual concerned, or unless pertinent to and within the scope of an authorized law enforcement activity. These rights include, but are not limited to, free exercise of religious and political beliefs, freedom of speech and the press, and freedom to assemble and to petition the government.

63.     Plaintiffs have not authorized the disclosure and submission of "records describing how [they] exercise rights guaranteed by the First Amendment" to their employers.  SFWTF's guidelines have impermissibly conditioned their disclosure, and indeed required them, upon compliance with the Mandate for those seeking compliance through religious exception.

## B.     Fundamental Constitutional Rights Violated by the Mandate.

64.     It is well settled that the "rights to determine one's own medical treatment, and to refuse unwanted medical treatment," are "*fundamental*[,]" and individuals have "a fundamental liberty interest in medical autonomy." *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014) (as amended) (internal cites omitted, emphasis added), cert. denied, *Coons v. Lew*, 575 U.S. 935, 135 S. Ct. 1699, 191 LEd2d 675 (2015).

65.     "Governmental actions that infringe upon a fundamental right receive strict scrutiny." *Fields v. Palmdale Sch. Dist*., 427 F.3d 1197, 1208 (9th Cir. 2005), as amended by 447 F.3d 1187 (9th Cir. 2006). *See also Washington v. Harper*, 494 U.S. 210, 223 (1990) (acknowledging in dicta that, outside of the prison context, the

right to refuse treatment would be a "fundamental right" subject to a "more rigorous standard of review").

66.    As such "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).

67.    This right is rooted in "the common-law rule that forced medication was a battery, and the long legal tradition protecting the decision to refuse unwanted medical treatment." *Washington v. Glucksberg*, 521 U.S. 702, 725 (1997).

68.    The fundamental right of due process "substantively protects a person's rights to be free from unjustified intrusions of the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (internal citations omitted).

69.    Therefore, persons have a "constitutional right to be free from state-imposed violations of bodily integrity." *Plumeau v. Sch. Dist. No. 40 City. Of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

70.    "Every violation of a person's bodily integrity is an invasion of his or her liberty. The invasion is particularly intrusive if it creates a substantial risk of permanent injury and premature death. Moreover, any such action is degrading if it overrides a competent person's choice to reject a specific form of medical treatment." *Washington v. Harper*, *supra*, 494 U.S. at 237.

71.    The unconstitutional conditions doctrine prohibits the government from conditioning continued employment "on a basis that infringes [] constitutionally protected interests . . ." *Perry v. Sindermann* 408 U.S. 593, 597 (1972).

72.    "[T]he very purpose of the unconstitutional conditions doctrine is to prevent the government from subtly pressuring citizens, whether purposely or inadvertently, into surrendering their rights." *Lebron v. Secretary, Florida Dept. of Children and Families*, 710 F.3d 1202, 1218 (11th Cir. 2013) (quoting *Bourgeois v. Peters*, 387 F.3d 1303, 1324-25 (11th Cir. 2004)).

## FIRST CAUSE OF ACTION
### For Declaratory Judgment and Injunctive Relief
### (Violation of Part 293 "Personnel Records"
### of Title 5 of the Code of Federal Regulations)

73.    Plaintiffs incorporate the allegations of paragraphs 1 through 72, and further allege:

74.    Compliance with the Mandate requires that federal employees submit to the government either: (i) patient medical and epidemiological records showing proof of their vaccination status, or (ii) patient medical records, epidemiological records, or records describing how individuals exercise rights guaranteed by the First Amendment sufficient to demonstrate to the satisfaction of Defendants, that the federal employee qualifies for a medical and/or religious exception to the Mandate.

75.    The SFWTF acknowledges medical and religious exceptions are required by law.

76.     Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations prohibit Defendants' requirement pursuant to the Mandate to produce, and indeed their possession of, employee records of patient medical records and epidemiological records, as required to show proof of vaccination status.

77.     Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations prohibit Defendants' requirement pursuant to the Mandate to produce, and indeed their possession of, employee records describing how individuals exercise rights guaranteed by the First Amendment to qualify for a religious exemption.

78.     Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations prohibit Defendants' requirement pursuant to the Mandate to produce, and indeed their possession of, employee medical records and epidemiological records to qualify for a medical exemption.

79.     Defendants' Mandate is therefore unlawful as the materials the federal employees are required to submit to demonstrate compliance violates Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations.

80.     An actual controversy exists related to the rights and obligations of the respective parties.

81.     Plaintiffs will be irreparably harmed in the absence of an injunction.

22

82.     Plaintiffs seek a judicial declaration that Defendants' Mandate is unlawful because it violates parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations and preliminary and permanent injunctions prohibiting Defendants from imposing employment sanctions for non-compliance with the Mandate.

**SECOND CAUSE OF ACTION**
**For Declaratory and Injunctive Relief**
**(Violation of Fourteenth Amendment Equal Protection as Applied to the Federal Government Through the Fifth Amendment)**

83.     Plaintiffs incorporate the allegations of paragraphs 1 through 72, and further allege:

84.     Equal protection "requires that all persons subjected to ... legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008). The touchstone of this analysis is whether the government creates disparity between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt,* 417 U.S. 600, 609 (1974).

85.     On its face, the Mandate treats those federal employees willing to surrender private, confidential, patient medical and epidemiological records to the government in violation of their constitutional rights and Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations differently from those unwilling to do so, irrespective of whether or not they are in fact fully vaccinated for COVID.

86. The Mandate thus discriminates against those unwilling to surrender private, confidential, patient medical and epidemiological records to the government in violation of their constitutional rights and Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations even though they are indistinguishable from those willing to do so.

87. There is no basis for this disparate treatment which is arbitrary and capricious as unwillingness to surrender private, confidential, patient medical and epidemiological records to the federal government in violation of their constitutional rights and Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations has no bearing upon, and it not related to, whether those individuals are, or are not, fully vaccinated for COVID.

88. Defendants' disparate treatment of those unwilling to surrender private, confidential, patient medical and epidemiological records to the government in violation of their constitutional rights and Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations is unconstitutional, unlawful, and arbitrary.

89. An actual controversy exists involving justiciable questions related to the rights and obligations of the respective parties.

90. Plaintiffs will be irreparably harmed in the absence of an injunction.

91. Plaintiffs seek a judicial declaration that Defendants' Mandate violates the Fourteenth Amendment Equal Protect as applied to the federal government

through the Fifth Amendment and preliminary and permanent injunctions prohibiting Defendants from imposing employment sanctions for non-compliance with the Mandate.

## THIRD CAUSE OF ACTION
### For Declaratory and Injunctive Relief
### (Violation of Fourteenth Amendment Substantive Due Process as Applied to the Federal Government Through the Fifth Amendment)

92.     Plaintiffs incorporate the allegations of paragraphs 1 through 72, and further allege:

93.     The Mandate and Defendants' efforts and actions to apply and enforce it violates the liberty protected by the Fourteenth Amendment to the Constitution applicable to the federal government through the Fifth Amendment, which includes rights of personal autonomy, self-determination, bodily integrity, and the right to reject medical treatment.

94.     The ability to decide for oneself whether to accept or refuse medical treatment is a fundamental right.

95.     The COVID vaccines are not vaccines, but are, as a factual matter, treatments.  They are referenced to herein as vaccines as a matter of common phrasing, but they are not.  They are treatments.

96.     Indeed, the CDC recently changed its very definitions of "Vaccine" and "Vaccinated" to eliminate the word, "immunity," from those definitions,[11] thus tacitly acknowledging that the COVID "vaccines" are treatments.

97.     Because the COVID vaccines are treatments – not vaccines – strict scrutiny applies.   The High Court has recognized a "general liberty interest in refusing medical treatment." *Cruzan by Cruzan v. Director, Missouri Dept. of Health* (1990) 497 U.S. 261, 278.  It has also recognized that the forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty. *Washington v. Harper* (1990) 494 U.S. 210; *see also id* at 223 (further acknowledging in dicta that, outside of the prison context, the right to refuse treatment would be a "fundament right" subject to strict scrutiny."

98.     Accordingly, the Mandate and Defendants' efforts and actions to apply and enforce it violates the Plaintiffs' constitutional right to decisional privacy with regard to medical treatment and the Ninth Amendment.

99.     As mandated medical treatments are a substantial burden, Defendants must prove that the Mandate is narrowly tailored to meet a compelling interest.

---

[11]    *Compare the old definition at* https://web.archive.org/web/20210826113846/https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm *with the new definition at* https://www.cdc.gov/vaccines/vac-gen/imz-basics.htm.

100.   No such compelling interest exists because the COVID vaccines are not effective against the now dominant Delta variant of COVID in that they do not prevent the recipient from becoming infected, getting reinfected, or transmitting COVID to others. Indeed, evidence shows that vaccinated individuals have more COVID in their nasal passages than unvaccinated people do. The Delta variant is the current variant and accounts for over 90% of the COVID infections in the United States at this time.

101.   Since the COVID vaccines are ineffective against the Delta variant, there can be no compelling interest to mandate their use at this time.

102.   But even if there were a compelling interest in mandating the COVID vaccinations, the Mandate is not narrowly tailored to achieve such an interest.

103.   The blanket Mandate ignores individual factors such as immunity based on prior infection increasing or decreasing the risks that the Plaintiffs—indeed, all Federal employees—pose to themselves or to others.

104.   Defendants entirely disregard whether federal employees have already obtained natural immunity despite the fact that natural immunity does actually provide immunity whereas the COVID vaccines do not, whether the employees work remotely, or whether the federal employees are fully vaccinated, but elect to not surrender private, confidential, patient medical and epidemiological records to the

federal government in violation of their constitutional rights and Parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations .

105.   Treating all federal employees the same, regardless of many various factors is not narrowly tailored.

106.   An actual controversy involving justiciable questions related to this controversy exists related to the rights and obligations of the respective parties.

107.   Plaintiffs seek a judicial declaration that Defendants' Mandate violates the Fourteenth Amendment Substantive Due Process as applied to the federal government through the Fifth Amendment and preliminary and permanent injunctions prohibiting Defendants from imposing employment sanctions for non-compliance with the Mandate.

## PRAYER

**WHEREFORE,** Plaintiffs pray for relief from this Court as follows:

**On the First Cause of Action**:

1.  Pursuant to 28 U.S.C. § 2201, a judicial declaration that:

    a.  Defendants' Mandate is unlawful because it violates parts 293.105 and 293.504 of Title 5 of the Code of Federal Regulations; and

    b.  For preliminary and permanent injunctive relief prohibiting Defendants from enforcing the unlawful Mandate.

**On the Second Cause of Action**:

1. Pursuant to 28 U.S.C. § 2201, a judicial declaration that:

    a. Defendants' Mandate violates the Fourteenth Amendment Equal Protect as applied to the federal government through the Fifth Amendment; and

    b. For preliminary and permanent injunctive relief prohibiting Defendants from enforcing the unconstitutional Mandate.

**<u>On the Third Cause of Action</u>**:

1. Pursuant to 28 U.S.C. § 2201, a judicial declaration that:

    a. Defendants' Mandate violates the Fourteenth Amendment Substantive Due Process as applied to the federal government through the Fifth Amendment;

    b. For preliminary and permanent injunctive relief prohibiting Defendants from enforcing the unconstitutional Mandate.

**<u>On all Causes of Action</u>**:

1. For judgment in favor of Plaintiffs;

2. For costs of suit herein; and

3. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all matters so triable.

Filed this 12th day of November, 2021.

HADAWAY, PLLC
2425 Lincoln Ave.
Miami, FL 33133
Tel: (305) 389-0336

*/s/ Brant C. Hadaway*
Brant C. Hadaway, B.C.S.
Florida Bar No. 494690
Email: bhadaway@davillierlawgroup.com

and

George R. Wentz, Jr.
*Pro Hac Vice Application to be filed*
The Davillier Law Group, LLC
935 Gravier Street, Suite 1702
New Orleans, Louisiana 70112
Email: gwentz@davillierlawgroup.com
Tel: (504) 582-6998

and

John W. Howard
*Pro Hac Vice Application to be filed*
Michelle D. Volk
*Pro Hac Vice Application to be filed*
Andrew G. Nagurney
*Pro Hac Vice Application to be filed*
JW Howard/ Attorneys, Ltd.
701 B Street, Suite 1725
San Diego, CA 92101
Email: johnh@jwhowardattorneys.com
          michelle@jwhowardattorneys.com
          drew@jwhowardattorneys.com